OPINION OF THE COURT
Miriam R. Best, J.
For the reasons that follow, petitioner’s writ of habeas corpus is dismissed.
Petitioner Michael Manos seeks a writ of habeas corpus directed to the Warden of Rikers Island Correctional Facility and the New York State Department of Corrections and Community Supervision (hereinafter DOCCS). The writ seeks to “cancel[ ] with prejudice the parole delinquency declared against relator and vacate[ ] with prejudice the parole warrant lodged against relator . . . and direct[ ] relator’s release from the custody of the respondent WARDEN” (Sokol aff at 7), on the grounds that *263 petitioner’s statutory rights to timely notice of the preliminary hearing and a timely preliminary hearing were violated.
Background
On May 12, 1989, petitioner was sentenced to concurrent indeterminate sentences of 15 years to life and three sentences of 3V2 to 7 years for his convictions of kidnapping in the first degree, robbery, grand larceny — not auto in the third degree and criminal possession of stolen property in the third degree (DOCCS exhibit A). Petitioner was released to parole supervision on March 28, 2013 (id.). Petitioner was declared delinquent as of June 3, 2013, and parole warrant No. 641244 was issued on June 12, 2013. The violation of release report charges that petitioner violated rule No. 2 of the rules governing parole in that he “failed to make his office report on 6/3/13 and thereafter, as he was instructed to do by Parole Officer Harford during an office visit on 4/29/13” (DOCCS exhibit B). It also alleges that petitioner violated rule No. 4 of the rules governing parole in that “on or before 6/11/13 he changed his approved residence . . . without the knowledge of his parole officer” (id.).
In his initial verified petition, petitioner states that “he had been detained in the city of New Orleans, Louisiana” on October 23, 2013 (verified petition ¶ 8). In his verified reply, however, petitioner states that “on or before October 23, 2013, [he] turned himself in to DEA [Agent] Patrick Lotwaleof in Jefferson Parish, New Orleans, Louisiana” (verified reply ¶ 4 [b]). However petitioner came to be in custody in Louisiana, he claims that on that same date of October 23, 2013, Agent Lotwaleof called DOCCS’ Inspector General’s office and notified them of his location and custody status, and that he was also brought before a local magistrate. Petitioner claims further that a clerk stated in open court that the clerk had spoken “with NYS DOCCS” and had been informed that petitioner had waived extradition (verified reply ¶ 4 [b], [c]; Manos aff of Jan. 29, 2014 ¶¶ c, d).[1] Petitioner claims that nothing besides the New York parole warrant was detaining him on October 23rd.
On October 24, 2013, Parole Officer James Holford sent a fax to Extradition Officer Douse of the Jefferson Parish Sheriffs office, which specifically directed Officer Douse to “see rule # 10 *264 on certificate of release to parole supervision regarding extradition” (verified reply ¶ 4 [d] and attached exhibit). Rule number 10 of the certificate of release to parole supervision is petitioner’s waiver of extradition in the event he were to leave the jurisdiction of New York State.
On October 25, 2013, Officer Douse sent a fax to DOCCS indicating that petitioner “has a pre-signed waiver” and also indicating the days and times that petitioner could be picked up and returned to New York (DOCCS exhibit E). Respondent alleges that petitioner was served with the violation of release report and the notice of violation on October 30, 2013 (Hehenberger aff at 3). Defendant concedes that he was served with a notice of violation but maintains that he was not served with the violation of release report (Manos aff of Jan. 29, 2014 ¶ e). On November 5, 2013, petitioner was transported from Louisiana to Rikers Island in New York (verified reply ¶ 4 [g]). A preliminary hearing was scheduled for and conducted on November 8, 2013 (DOCCS exhibit G).[2] Hearing Officer Crawford found that there was probable cause with respect to charge number one (DOCCS exhibit G at 20).
Analysis
Executive Law § 259-i (3) (a) (iii) provides that
“[wjhere the alleged violator is detained in another state pursuant to such warrant and is not under parole supervision pursuant to the uniform act for out-of-state parolee supervision or where an alleged violator under parole supervision pursuant to the uniform act for out-of-state parolee supervision is detained in a state other than the receiving state, the warrant will not be deemed to be executed until the alleged violator is detained exclusively on the basis of such warrant and the department has received notification that the alleged violator (A) has formally waived extradition to this state or (B) has been ordered extradited to this state pursuant to a judicial determination. The alleged violator will not be considered to be within the convenience and practical control of the department until the warrant is deemed to be executed.”
The warrant is not deemed executed until the other jurisdiction relinquishes custody and the parolee is available for rendition. *265 (See People ex rel. Matthews v New York State Div. of Parole, 95 NY2d 640, 645 [2001] [parole violation warrant not deemed executed while petitioner was incarcerated in another state until petitioner was held exclusively on the strength of the New York State detainer and was available for extradition].)
Petitioner claims that because he had presigned a waiver of extradition, the parole warrant was executed on October 23, 2013, because on that date he was detained exclusively on the parole warrant and had previously waived extradition as a condition of his release. However, the plain language of the statute clearly provides for the detaining state to provide notification to New York with respect to an alleged violator’s extradition status. Despite a presigned waiver of extradition, an alleged violator may challenge or contest the validity of the waiver and resist extradition. (See generally People v Isaacs, 139 Misc 2d 323, 326 [Rockland County Ct 1988] [refusing to enforce written waiver of extradition signed by defendant as part of the terms of defendant’s probation in Arizona, holding waiver was “far too cursory to be granted validity by this court” where waiver did not “reflect any explanation of the extradition process nor any true understanding by the defendant of that process”]; People v Lattimore, 138 Misc 2d 20, 21-22 [Crim Ct, NY County 1987] [“The majority rule throughout the United States is that formal extradition proceedings are not necessary to compel the return of absconding probationers or parolees who have previously signed a prerelease waiver” (citations omitted); holding Georgia authorities were entitled to take defendant without extradition proceedings or a governor’s warrant where waiver was explicit and unequivocal]; see also People ex rel. Lathan v Warden, Sing Sing Correctional Facility, 105 AD2d 861, 861 [2d Dept 1984] [“petitioner could not he returned to New York without formal extradition proceedings because California does not honor an advance waiver of extradition form which has been signed in New York as a condition of receiving parole in New York” (citations omitted)], lv denied 64 NY2d 610 [1985].) Accordingly, New York was entitled to rely on the statute and await formal notification that petitioner was not challenging his extradition. Therefore, the warrant cannot be deemed executed within the meaning of Executive Law § 259-i (3) (a) until New York received such formal notification.
This court’s analysis is consistent with that of other courts in this county. (See People ex rel. Santiago v Warden, Sup Ct, Bronx County, Sept. 24, 2010, Gross, J., index No. 251163-10 [rejecting *266 petitioner’s claim that he was in the convenience and control of the Division on the date that the Florida authorities informed it that Santiago had been arrested and jailed; parole warrant was deemed executed on the date that the “Division was formally notified via e-mail from Florida authorities that petitioner’s waiver of extradition was valid” and that he was being held exclusively on the parole warrant and available for extradition to New York State]; see also People ex rel. Padilla v Warden, Sup Ct, Bronx County, Jan. 14, 2010, Price, J., index No. 340676-2010 [despite notification from Connecticut law enforcement officials that absconder had waived extradition on Aug. 17, 2010, warrant was not deemed executed until Aug. 23, 2010, the date that Connecticut State Attorney’s office notified the Division that petitioner was available for rendition].)[3] To the extent that the court reached a contrary result in People ex rel. Lewis v New York State Div. of Parole (36 Misc 3d 1212[A], 2012 NY Slip Op 51259[U] [Sup Ct, Bronx County 2012, Livote, J.]), this court respectfully declines to follow its reasoning that DOCCS is on notice as soon as it is notified of the out-of-state detention unless there is some indication that the waiver will not be honored.[4]
Thus, the relevant date here is not the date when DOCCS learned that petitioner was in custody in another state on the New York parole warrant but rather the date when DOCCS was notified that he had “formally waived” extradition and was available for pickup.[5] (People ex rel. McDaniel v Berbary, 35 AD3d 1172, 1173 [4th Dept 2006] [“(t)he warrant . . . was not deemed executed until March 23, 2004, the day the Division received notification that petitioner had waived extradition”], lv denied 8 NY3d 812 [2007]; People ex rel. Aquino v New York State Bd. of Parole, 250 AD2d 789, 789 [2d Dept 1998] [“The parole warrant was deemed executed when the Division of Parole received notification that the petitioner had waived extradition from Puerto Rico”]; Matter of Johnson v Fischer, 2012 NY Slip Op 30914[U] [Sup Ct, St. Lawrence County 2012] [where petitioner waived extradition to New York on June 30, 2010, *267 and NYS Division of Parole was notified of waiver on July 6, 2010, warrant was not deemed executed until July 6, 2010].) Accordingly, the warrant is deemed executed on October 25, 2013.
Executive Law § 259-i (3) (c) (iii) provides that
“[t]he alleged violator shall, within three days of the execution of the warrant, be given written notice of the time, place and purpose of the hearing unless he or she is detained pursuant to the provisions of subparagraph (iv) of paragraph (a) of this subdivision. In those instances, the alleged violator will be given written notice of the time, place and purpose of the hearing within five days of the execution of the warrant. The notice shall state what conditions of presumptive release, parole, conditional release or post-release supervision are alleged to have been violated, and in what manner ... As far as practicable or feasible, any additional documents having been collected or prepared that support the charge shall be delivered to the alleged violator.”
Accordingly, DOCCS had until October 30, 2013 to serve petitioner. It is undisputed that on October 30, 2013 petitioner signed a notice of violation (DOCCS exhibit F; verified reply ¶ 4 [f]; Manos aff of Jan. 29, 2014 ¶ e). Notification was therefore timely.
Petitioner concedes that “it is true that [his] signature appeared on the line below the notation ‘Violation of Release Report Received’ ” but argues that he did not receive the violation of release report (Manos aff of Jan. 29, 2014 ¶ h).[6] He claims that he “did not know what exactly . . . the term [violation of release report] implied” (Manos aff of Jan. 29, 2014 ¶ h). The court rejects this claim as unworthy of belief. The case summary states that
“[u]nder this term of Community Supervision, the subject has had two prior violations. In a Final Hearing held on 3/18/2010, the subject was sentenced to a twelve-month hold for violation of Rule # 2, failing to report as directed by the Parole officer. It should be noted, that during the time the subject stopped reporting, from 2005-2010, the subject changed his residence, assumed another *268 identity under the [n]ame ‘Christian Michael De Medido [’] and was apprehended in the State of California. The second violation centered around the subject absconding from parole supervision and leaving the state of New York without permission of his parole officer. Subject was sentenced to 12 months.” (DOCCS exhibit B.)
Thus, petitioner was no novice to parole revocation proceedings or the relevant paper work. His attempt to explain away his signed acknowledgment of receipt of the violation of release report by claiming unfamiliarity with that document is incredible.
Moreover, even if this court were to accept this allegation as true, it would not change the result here. This is so because failure to comply with the five-day limit does not affect the right to be restored to parole absent a showing of prejudice. (People ex rel. Thompson v Warden of Rikers Is. Correctional Facility, 41 AD3d 292 [1st Dept 2007].) Petitioner’s boilerplate and conclusory allegation that “he was unable to call witnesses or defend himself at his preliminary” (aff ¶ 13) because he was not served with the violation of release report is insufficient to establish prejudice. After all, it is undisputed that petitioner was ultimately found in Louisiana, and he does not state with any specificity what witness he would have called to defend himself against a charge that he failed to report to his parole officer on June 3, 2013 and thereafter.[7] Thus, the record is utterly devoid of prejudice to the defendant at the preliminary hearing.
Finally, Executive Law § 259-i (3) (c) (i) provides that “[w]ithin fifteen days after the warrant for retaking and temporary detention has been executed, . . . the board of parole shall afford the alleged presumptive release, parole, conditional release or post-release supervision violator a preliminary revocation hearing before a hearing officer designated by the board of parole.” Because the warrant was executed on October 25, 2013, defendant’s preliminary hearing on November 8, 2013 was timely.
For all of these reasons, the petition for a writ of habeas corpus is dismissed.

. Both the verified reply and petitioner’s affidavit of January 29, 2014 initially asserted that Agent Lotwaleof called DOCCS in petitioner’s presence (verified reply ¶ 4 [b]; Manos aff of Jan. 29, 2014 f c), but significantly both of those assertions of personal knowledge were deleted before being submitted to this court.

. Petitioner does not allege that he did not have timely notice of the date of the preliminary hearing.

. Judge Gross’s decision in Santiago is included at DOCCS exhibit I.

. Moreover, Lewis is distinguishable on its facts. Lewis attached a copy of the North Carolina complaint as proof that he was being held exclusively on the New York warrant. (People ex rel. Lewis v New York State Div. of Parole, 2012 NY Slip Op 51259[U], *2.) Here, Manos has attached no such proof.

. In this court’s view, Louisiana’s notification to DOCCS that petitioner was “available for pickup” was equivalent to a notification that no local charges were holding petitioner and that neither petitioner nor Louisiana was challenging the waiver of extradition.

. DOCCS exhibit F appears to be a “Notice of Violation,” however, it is for the most part illegible.

. Petitioner’s counsel stated at the preliminary hearing in response to the hearing officer’s questions that she had an opportunity to discuss the violation with petitioner (DOCCS exhibit G at 9).